IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**WYLDEWOOD CELLARS, INC., and
JOHN BREWER,**

        **Plaintiffs,**

v.

**TORRO, LLC d/b/a TORRO FUNDING,**

        **Defendant.**

Case No. 23-1017-DDC-GEB

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Torro, LLC's Motion to Transfer (Doc. 6). Plaintiffs Wyldewood Cellars, Inc. and John Brewer have responded (Doc. 12), and defendant has replied to plaintiffs' Response (Doc. 14). For reasons explained below, the court grants defendant's Motion to Transfer (Doc. 6) and transfers this lawsuit to the United States District Court for the District of Utah.

**I.  Factual Background**

The following facts come from the Verified Petition that plaintiffs filed in Sumner County, Kansas District Court (Doc. 1-1), before the action's removal to our court, as well as exhibits attached to it.[1]

---

[1]  The court properly may consider these documents when deciding the Motion to Transfer. Defendant's motion asserts that the court should transfer this action because a contract's forum selection clause requires the parties to litigate the case in Utah. The existence of a "valid forum selection clause may prohibit a federal court from exercising jurisdiction if the parties contractually agreed to litigate the matter elsewhere." *K.R.W. Constr., Inc. v. Stronghold Eng'g Inc.*, 598 F. Supp. 3d 1129, 1135–36 (D. Kan. 2022).

When determining whether the court has jurisdiction to decide a dispute, "a district court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (citation and

Plaintiff Wyldewood—a family-owned vineyard and winery in Peck, Kansas—sustained financial injury during the COVID-19 pandemic. Doc. 1-1 at 5 (Pet. ¶¶ 16–17). Like many small businesses, it sought financing from lenders to stay afloat. Defendant Torro provided funding to plaintiffs' vineyard and winery business in the form of a "merchant cash advance" (MCA) agreement in March 2021.[2] *Id.* at 6 (Pet. ¶ 24). Relevant here, the parties' MCA agreement includes the following forum selection clause:

> **43. Governing Law, Venue, and Jurisdiction.** This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of Utah, without regards to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted exclusively in any court sitting in Utah State, (the **"Acceptable Forums"**). The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to inconvenience of the jurisdiction or venue. Should a proceeding be initiated in any other forum, each of the parties to this Agreement irrevocably waives any right to oppose any motion or application made by any other party to transfer such proceeding to an Acceptable Forum. Seller and its Guarantor(s) acknowledge and agree that the Purchase Price is being paid and received by Seller in Utah, that the Specified Percentage of the Future Receipts are being delivered to [defendant] LLC in Utah, and that the transaction contemplated in this Agreement was negotiated, and is being carried out, in Utah. Seller and its Guarantor(s) acknowledge and agree that Utah has a reasonable relationship to this transaction.

Doc. 1-1 at 49 (MCA Agreement § 43).

Shortly after entering this agreement, plaintiff Wydlewood was no longer able to make daily payments and defaulted. *Id.* at 18 (Pet. ¶¶ 75–76). In July 2021, defendant recovered a

---

internal quotation marks omitted). "The court's exercise of such discretion does not convert a Rule 12(b)(1) motion into a summary judgment motion unless resolution of the jurisdictional question is intertwined with the merits." *Id.* (citation and internal quotation marks omitted). Here, the jurisdictional question isn't intertwined with the merits. So, the court properly can consider documents outside the pleadings.

[2] Defendant Torro loans money to merchants in the form of "merchant cash advances"—which it describes as the purchase and sale of future receivables. Doc. 1-1 at 5 (Pet. ¶ 19). Generally, issuers of merchant cash advances provide merchant with a lump sump in exchange for a share of the merchant's future sales. *Id.*

judgment against plaintiffs for $118,699 plus costs in Utah state court. *Id.* (Pet. ¶ 76). Defendant then sought to enforce this judgment against plaintiffs in a state court in Johnson County, Kansas. *Id.* (Pet. ¶ 77).

The lawsuit now pending before this court is the second lawsuit in this story. In it, commenced in December 2022, plaintiffs sued defendant for (1) violating RICO; (2) conspiracy under 18 U.S.C. § l962; (3) tortious interference with a contract; (4) violating the Kansas Consumer Protection Act (KCPA) by committing deceptive acts; (5) violating the KCPA by committing unconscionable acts; and (6) breach of contract. Doc. 1-1 at 19–38 (Pet. ¶¶ 79–189). Plaintiffs filed this action in the District Court of Sumner County, Kansas. *See* Doc. 1-1. Defendant removed the case to our court, invoking diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1 at 1.

Relying on a forum selection clause in the MCA agreement between defendant and plaintiffs, defendant now moves to transfer this case. Doc. 6. This issue is fully briefed. For reasons explained below, the court grants defendant's Motion to Transfer (Doc. 6).

**II.      Legal Standards**

    **A.      Valid Forum Selection Clauses and Jurisdiction**

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Even where a federal court has subject

matter jurisdiction, "a valid forum selection clause may prohibit a federal court from exercising jurisdiction if the parties contractually agreed to litigate the matter elsewhere." *K.R.W. Constr., Inc. v. Stronghold Eng'g Inc.*, 598 F. Supp. 3d 1129, 1135–36 (D. Kan. 2022).

### B.     Standard for Transfer under 28 U.S.C. § 1404

Title 28 U.S.C. § 1404 governs change of venue. It provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A defendant who has removed an action from state court "can seek a transfer under § 1404(a)" if "the case can be better litigated and tried in another division or district." *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1300 (11th Cir. 2001). A court may transfer an action "under § 1404(a) at any time during the pendency of the case, even after judgment has been entered." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (citing 15 Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 3844 at 334–35 (1986)).

A district court has broad discretion under § 1404(a) to adjudicate motions to transfer on a case-by-case review of convenience and fairness. *Id.* at 1516. The Tenth Circuit has instructed district courts to consider the following factors when determining whether to transfer a case under this provision:

> plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)); *see also Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010).  The party moving to transfer a case bears the burden to show that transfer is appropriate under § 1404(a).  *Bartile Roofs, Inc.*, 618 F.3d at 1167.  In the absence of a valid forum selection clause, the movant must "demonstrate that the balance of factors 'strongly favors' a transfer of venue under § 1404(a)."  *Id.* at 1167 n.13 (citations omitted).  But when the moving party uses § 1404(a) as a mechanism to enforce a valid forum selection clause, different rules apply.

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).  In that situation, a court should deny a § 1404(a) motion to transfer only "under extraordinary circumstances unrelated to the convenience of the parties[.]"  *Id.*  "The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways[:]"  (1) plaintiff's choice of forum bears no weight on the analysis; (2) the parties' private interests—such as convenience for themselves or witnesses likewise bears no weight; and (3) the § 1404(a) transfer of venue won't carry the original venue's choice of law rules.  *Id.* at 63–65.  Thus, in a case subject to a valid forum selection clause, "a district court may consider argument about public-interest factors only."  *Id.* at 64.  And "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."  *Id.*

### III.   Analysis

Defendant has alleged facts demonstrating that the parties are diverse for subject matter jurisdiction purposes under 28 U.S.C. § 1332.  Doc. 1 at 1–2 (Notice of Removal ¶¶ 3–4, 6).  Having decided that it possesses subject matter jurisdiction, the court next considers whether a

5

valid forum-selection clause nonetheless prohibits it from exercising jurisdiction. As explained below, the court concludes that a valid forum-selection clause exists; and thus, the parties contractually agreed to litigate the matter elsewhere.[3] This agreement means, however, that our court—absent exceptions not presented here—must decline to exercise its jurisdiction. Defendant also demonstrates that the § 1404(a) factors favor transfer. For both reasons, the court grants defendant's Motion to Transfer (Doc. 6).

Plaintiffs oppose the transfer. They argue (1) the contract's forum selection clause is no longer enforceable; (2) alternatively, if enforceable, the forum selection clause doesn't apply to their claims; (3) transfer here would violate Kansas's public policy; and (4) the court shouldn't enforce the forum selection clause because it's "unreasonable and unjust." The court addresses each argument, below.

A. **Is the forum selection clause enforceable?**

Plaintiffs argue that the forum selection clause in the MCA agreement is no longer enforceable because defendant registered a judgment—secured in an earlier breach of contract action—with a Kansas state court. Thus, plaintiffs argue, the parties' MCA agreement merged into defendant's judgment. That's so because "a contract merges into a judgment entered upon it, and the judgment thereafter defines the parties' legal rights." *See* Doc. 12 at 5 (quoting *Harder v. Foster*, 401 P.3d 1032, 1041–42 (Kan. Ct. App. 2017) (citation and internal quotations

---

[3]   Defendant also argues that the MCA agreement's forum selection clause precludes plaintiffs from *opposing* its motion to transfer at all. Defendant interprets the clause to require plaintiffs waive "any right to oppose any motion or application made by any other party to transfer [this] proceeding to" Utah. Doc. 1-1 at 49 (MCA Agreement § 43). Plaintiffs respond, arguing that this waiver—one waiving the right to oppose transfer—doesn't apply to their arguments about unenforceability for public policy reasons. The court agrees. Thus, it addresses plaintiffs' arguments on the merits. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought[.]").

omitted)). When defendant secured a judgment against plaintiffs in July 2021, plaintiffs contend, the contract merged into that judgment, and thus the contract—including the forum selection clause—stopped governing the legal rights between the parties.

But plaintiffs cite no case supporting their argument that a judgment extinguishes a previously valid forum selection clause and prevents it from applying to any future, separate lawsuits involving the same contract. Many courts have reached exactly the opposite conclusion: choice of forum provisions survive termination of a contract. *See CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 513 F. Supp. 3d 801, 806 (N.D. Ohio 2021) ("[C]ontractual dispute resolution provisions, such as those covering choice of forum and choice of law, survive the termination of the contract."); *see id.* ("'Although termination and cancellation of an agreement extinguish future obligations of both parties to the agreement, neither termination nor cancellation affect those terms that relate to the settlement of disputes or choice of law or forum selection clauses.'" (quoting 13 *Corbin on Contracts* § 67.2, at 12 (rev. ed. 2003))); *Delta Alcohol Distribs. v. Anheuser-Busch Int'l, Inc.*, 28 F. Supp. 3d 682, 689 (E.D. Mich. 2014) ("The case law reviewed by the Court supports broad application of the forum selection clause although Delta's claims are not for breach of the contract and even if the alleged tortious conduct occurred before the contract commenced *or after it terminated*." (emphasis added)). The court isn't convinced by plaintiffs' first argument, and thus concludes the MCA agreement's forum selection clause remains in effect.

### B. Does the forum selection clause apply to plaintiffs' claims here?

Next, plaintiffs argue that the MCA agreement's forum selection clause doesn't apply to the lawsuit pending before this court now. They argue that their RICO, KCPA, and tortious

7

interference claims are unrelated to any duties or obligations arising from the parties' contract, and thus the forum selection clause doesn't apply.

Plaintiffs cite cases from the Second and Third Circuits that, they contend, stand for the following proposition: a forum selection clause that contains the language "arising out of" a contract covers only actions originating from that contract. *See* Doc. 12 at 7 (first citing *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 100 (3d Cir. 2018) (holding that where forum selection "clause encompasses only disputes 'arising out of' the contract . . . a contractual defense alone [isn't] sufficient to bring the dispute within the scope of the clause"); then citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007) ("We do not understand the words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract.")). Then plaintiffs assert that the forum selection clause in their MCA agreement—covering "[a]ny lawsuit, action or proceeding arising out of or in connection with this Agreement"—covers only claims grounded in duties, rights, and obligations provided by the contract. Doc. 1-1 at 49 (MCA Agreement § 43).

Defendant disputes plaintiffs' characterization of the contract. As defendant correctly notes, the MCA agreement here covers any dispute that "arise[s] out of *or in connection with*" the contract. Doc. 1-1 at 49 (MCA Agreement § 43) (emphasis added). And many courts have held that forum selection clauses designating a forum for disputes "arising out of" or "in connection with" an agreement are entitled to broad interpretation and require the parties to adjudicate the dispute in the specified forum. *See GIP Dev. SARL v. Shaghal Ltd.*, No. CV 22-6573-JFW(JPRx), 2022 WL 18932821, at *5 (C.D. Cal. Dec. 9, 2022) (holding that forum selection clause including "in connection with" language "must be broadly interpreted" and that

8

means it "'reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract' and the allegations 'need only touch on matters covered by the contract'" (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (collecting Ninth Circuit cases holding the same))). *See also Williams v. Imhoff*, 203 F.3d 758, 765 (10th Cir. 2000) ("[W]e believe [the phrase 'arising out of'] must be broadly construed to mean 'originating from,' 'growing out of,' or 'flowing from.'" (citations omitted)).

Also, defendant argues plaintiffs' RICO and KCPA claims do arise, in fact, from the contract because both claims directly challenge the contract and its terms. *See* Doc. 1-1 at 19 (Pet. ¶ 82) (RICO Count alleges that "in the MCA Agreement, [defendant] made multiple representations to [plaintiffs] that were false . . . ."); *see also id.* at 30 (Pet. ¶ 150) (KCPA Count alleges that the "MCA Agreement constitutes a consumer transaction between [defendant] and [p]laintiffs."). The court agrees with defendant's view of this contract's provision. Plaintiffs' statutory claims are ones "originating from, growing out of or flowing from" the parties' MCA agreement. *See Williams*, 203 F.3d at 765 (citations and internal quotation marks omitted).

The agreement's forum selection clause reaches plaintiffs' claims in this lawsuit. First, plaintiffs' argument contains a major flaw—it simply ignores the words "or in connection with" found in the forum selection clause at issue here. Second, plaintiffs also bring a breach of contract claim. This claim alleges that defendant breached the MCA agreement. *See* Doc. 1-1 at 37 (Pet. ¶¶ 187–89) (Breach of Contract Count alleges defendant "breached the respective and applicable MCA Agreement . . . ."). Plaintiffs never address this claim in their briefing. Plainly, it arises from the MCA agreement, and thus is subject to the forum selection clause. Plaintiffs

9

never argue otherwise or supply any reason not to transfer that claim. Thus, plaintiffs' second argument opposing transfer also fails.

> C. Does Kansas public policy prevent the court from enforcing the forum selection clause?

Plaintiffs next argue that the court shouldn't enforce the MCA agreement's forum selection clause because doing so would violate plaintiffs' "statutory right" to litigate their Kansas Consumer Protection Act claims in Kansas. The KCPA provides that suppliers who engage in consumer transactions in Kansas submit themselves to the jurisdiction of Kansas courts for any cause of action arising out of the transactions. Kan. Stat. Ann. § 50–638(a). It also provides that a "consumer may not waive or agree to forego rights or benefits under this act." *Id.* § 625(a).

Plaintiffs argue that any forum selection clause precluding a Kansas consumer from bringing a KCPA claim in Kansas violates Kansas's public policy. Plaintiffs cite a Kansas Court of Appeals opinion—*Kansas City Grill Cleaners, LLC v. BBQ Cleaner, LLC*—as support for their position. 454 P.3d 608, 613 (Kan. Ct. App. 2019). In *Kansas City Grill Cleaners*, the Kansas Court of Appeals held that a forum-selection clause eliminating a Kansas consumer's right to a Kansas venue to assert a KCPA claim in a Kansas venue contravenes Kansas public policy. *Id.* ("[T]he KCPA affords Kansas consumers, who may be entitled to minimal damages, the right to a Kansas venue against nonresident defendants.").

Defendant responds, arguing that *Kansas City Grill Cleaners* doesn't require the court to retain jurisdiction and, indeed, our court has rejected this argument multiple times. For example, in *Billings, M.D. v. Clinitec Int'l, Inc.*, our court held that enforcing a forum selection clause didn't violate the KCPA because plaintiff could bring his KCPA claims in another jurisdiction. *Billings, M.D. v. Clinitec Int'l, Inc.*, No. 00-1236-JTM, 2000 WL 1072167, at *3 (D. Kan. July

10

25, 2000) ("By signing the Agreement containing the forum selection clause, plaintiff did not waive or agree to forego any rights or benefits.  Rather, he agreed to litigate any disputes arising out of or related to the Agreement in a Pennsylvania state court.").  Ten years later, our court, citing *Billings*, enforced the parties' forum selection clause—governing actions "relating to [the] agreement"—and held that this kind of clause didn't "necessarily foreclose plaintiff's KCPA claims;" instead it meant plaintiff would "have to litigate the choice of law question in the proper forum—a Wisconsin court." *Streit v. Snap-On Equip., Inc.*, No. 10-4086-KHV-DJW, 2010 WL 5058540, at *4 (D. Kan. Dec. 6, 2010).

As these cases illustrate, "Kansas courts do enforce forum selection clauses, and thus there is no Kansas public policy against such clauses generally." *Herr Indus., Inc. v. CTI Sys., SA*, 112 F. Supp. 3d 1174, 1179, 1182 (D. Kan. 2015) (enforcing the parties' forum selection clause requiring plaintiff to bring its claims in Luxembourg despite plaintiff's argument that the forum selection clause violated Kansas public policy favoring a Kansas forum for plaintiffs to file actions involving mechanic's liens and notwithstanding that Kan. Stat. Ann. § 16-1803(b)(2) provides that a provision in a private construction contract that purports to waive or extinguish rights provided by Kansas's mechanic's lien statutes "shall be against public policy and shall be void and unenforceable.").  The court agrees with defendant, and concludes that plaintiffs must bring their KCPA claims in Utah—the forum the parties selected in their contract with one another.

### D.       Section 1404(a) Factors and Fairness Considerations

Defendant filed this Motion to Transfer under 28 U.S.C. § 1404(a).  It argues that under Tenth Circuit case law, the parties' MCA agreement contains a "mandatory" forum selection clause.  "Mandatory forum selection clauses contain clear language showing that jurisdiction is

11

appropriate only in the designated forum.  In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." *See K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 498 (10th Cir. 2002) (citations and internal quotation marks omitted).

Here, the MCA agreement specifies that "[a]ny lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted *exclusively* in any court sitting in Utah State" and provides that "each of the parties to this Agreement irrevocably waives any right" to transfer or oppose a transfer from Utah.  Doc. 1-1 at 49 (MCA Agreement § 43) (emphasis added).  The agreement adopts courts located in one state; the jurisdictional language is exclusive; and it prohibits litigation in other jurisdictions—"a significant indication that this provision is mandatory."  *Red Barn Shop, LLC v. Plainfield Renewable Energy, LLC*, No. 2:18-CV-2613-CM-KGG, 2019 WL 1332314, at *2 (D. Kan. Mar. 25, 2019) ("Language creating a mandatory forum selection clause must be exclusive, such as 'only,' 'sole,' or 'exclusive.'" (citations omitted)); *See also Skipton v. RevHoney, Inc.*, No. 2:19-CV-02682-HLT, 2021 WL 10395828, at *2 (D. Kan. Mar. 12, 2021) (explaining that "exclusionary terms, like 'exclusive,' 'sole,' or 'only' are typically required for a forum-selection clause to be mandatory" (citing *K & V Sci. Co.*, 314 F.3d at 500)).  Thus, the court concludes that the MCA agreement's forum selection clause is mandatory.

Concluding that this forum selection clause is mandatory, the court must give that provision "controlling weight" unless plaintiffs can persuade the court to ignore it.  *See Tallgrass Talent Grp., LLC v. Advantage Sales & Mktg., LLC*, No. 17-2272-JAR-GEB, 2017 WL 4123304, at *3 (D. Kan. Sept. 18, 2017).  "As the party acting in violation of the forum-selection clause, [plaintiffs] must bear the burden of showing that public-interest factors overwhelmingly disfavor

12

a transfer." *Atl. Marine Constr. Co.*, 571 U.S. at 67. "Relevant public interest factors are 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Tallgrass Talent Grp., LLC*, 2017 WL 4123304, at *3 (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 62 n.6.).

    Defendant provides three reasons that these public interest factors support transfer to Utah. First, there is no ground for arguing that a transfer of this case would unduly congest Utah courts. Second, the parties agreed "the transaction contemplated in this Agreement was negotiated, and is being carried out, in Utah," and they agreed that to a Utah choice of law provision, thus, the case isn't a "local" Kansas case. Doc. 1-1 at 49 (MCA Agreement § 43). Third, a Utah court is more familiar with and ready to apply Utah law than is this court.

    Plaintiffs don't squarely address these § 1404(a) factors. But they do argue that the court shouldn't enforce the forum selection clause because it's "unreasonable and unjust" for two reasons. *See* Doc. 12 at 9 (citing *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992) ("Forum selection provisions are 'prima facie valid' and a party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances.")). Neither argument carries the day.

    First, plaintiffs argue that defendant secured the agreement containing the forum selection clause by "overreaching." Doc. 12 at 9. That's so, plaintiffs assert, because the parties didn't negotiate the contract's terms, and defendant "knew or should have known" that plaintiff "needed cash immediately to have sufficient funds to continue to operate." *Id.* at 9–10. These

13

conclusory allegations don't carry plaintiffs' "heavy burden of showing that the provision itself is invalid[.]" *See Riley*, 969 F.2d at 957.

Second, plaintiffs argue that since defendant already has availed itself of Kansas courts by registering its judgment against plaintiffs here, the court shouldn't require plaintiffs to litigate in both Kansas and Utah. Plaintiffs cite no authority for this argument. Defendant responds that the only reason it is attempting to recover in Kansas is because plaintiffs have failed to satisfy the judgment against plaintiffs that defendant secured in Utah's courts. Plaintiffs' arguments don't convince the court that this outcome—transferring this case to Utah— would amount to an "unjust" one.

In sum, both of plaintiffs' "unreasonable and unjust" arguments fall far short of "showing that public-interest factors overwhelmingly disfavor a transfer." *See Atl. Marine Constr. Co.*, 571 U.S. at 67. Thus, the court gives the parties' MCA agreement controlling weight, and declines plaintiffs' request to retain jurisdiction over this case.

## IV.     Conclusion

The parties entered an agreement with a valid forum selection clause. This clause provides that any legal proceeding *arising out of or in connection with* the agreement must proceed *exclusively* in a Utah court. Plaintiffs have failed to produce any good reason that the § 1404(a) factors or any other reason overwhelmingly disfavor transfer. Thus, the court grants defendant's motion and transfers this case to United States District Court for the District of Utah.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Transfer (Doc. 6) is granted. The court transfers this action to the United States District Court for the District of Utah. The court directs the Clerk of the Court to take all appropriate actions to notify the Utah court of this transfer and provide it with access to all case records.

**IT IS SO ORDERED.**

**Dated this 1st day of June, 2023, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree
United States District Judge**

15